IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BENJAMIN WILLIAM FAWLEY,

    Plaintiff,

v.                                                                                                        No. CV 11-61 BB/CG

JOE WILLIAMS, et al.,

    Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Plaintiff Benjamin Fawley's *Complaint, A Civil Action Under 42 U.S.C. § 1983*, (Doc. 1), *Defendants' Answer*, (Doc. 25), and *Defendants' Court Ordered Martinez Report*, (Doc. 34). Plaintiff complains that Defendants have restricted his access to the Courts in violation of the United States Constitution by preventing him from pursuing a habeas petition and a § 1983 complaint in his native Virginia. (Doc. 1 at 4-7). He seeks injunctive, declaratory, and monetary relief. (*Id.* at 7-8). Defendants filed a *Martinez* report wherein they claim that they have made all reasonable efforts to provide Plaintiff with legal access and that he has failed to demonstrate that he was harmed by Defendants' actions. (Doc. 34 at 10-13, 19-20). Plaintiff did not file a response to the *Martinez* report and the time for doing so has passed. The Court, having considered the parties' filings, the relevant law, and otherwise being fully advised in the premises, **RECOMMENDS** that the complaint be **DISMISSED WITH PREJUDICE**.

    **I.    Background**

Plaintiff claims that he was incarcerated in Virginia until he was transferred to the

Central New Mexico Correctional Facility ("CNMCF") on February 2, 2009. (Doc. 1 at 2-3).[1] Plaintiff complains that, upon his arrival in New Mexico, Defendants refused to provide him with access to legal materials while he was incarcerated at CNMCF. (*Id.* at 4). He claims that he had "zero access" to "rules of procedure of law . . . case law or legal authority . . . [or] to a person trained in the law." (*Id.*). He contends that the New Mexico Defendants denied him access to legal materials simply because he was an out-of-state prisoner. (*Id.* at 4-5).

The complaint states that this discrimination prejudiced Plaintiff's ability to meaningfully pursue two cases that were ongoing in Virginia at the time of his transfer. (*Id.* at 4-6). First, he was pursuing a state habeas petition before the Virginia Supreme Court at the time of his transfer. (*Id.* at 4). The Virginia Supreme Court had denied his habeas petition on January 14, 2009, mere weeks before his transfer to New Mexico. (*Id.*). Plaintiff wanted to file a motion for reconsideration with the Virginia Supreme Court but he claims that his lack of access to legal materials at CNMCF prevented him from doing so in a timely fashion. (*Id.* at 5-6). Second, he was pursuing a civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Virginia. (*Id.* at 5). Prior to his transfer, he was ordered to provide copies of the grievances he had filed while incarcerated in Virginia. (*Id.* at 5). Plaintiff claims he was unable to comply with the order because "[New Mexico] prison officials refused me any and all legal access . . . denying photocopying services and law library access . . ." (*Id.*).

---

[1] Plaintiff was transferred pursuant to the Interstate Compact Agreement. Plaintiff claims that he was incarcerated at CNMCF from February 2, 2009, until May 12, 2009. (Doc. 1 at 2). Plaintiff is currently incarcerated at the Lea County Correctional Facility. (*Id.*).

**II.     Standard of Review**

In the Court's Order directing submission of a *Martinez* Report, the parties were advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their submissions could be used in deciding whether to grant summary judgment. (Doc. 33 at 4-5). Considering that the Defendants have not filed any dispositive motions since submitting the *Martinez* report, the Court finds it appropriate to construe the report as a motion for summary judgment.

Summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c)(2). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Affidavits or other evidence offered by the nonmoving party must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmoving party. Although all facts are construed in favor of the nonmoving party, it is still Plaintiff's responsibility to "'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to [his] case' in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting *Celotex,* 477 U.S. at 322).

The Court liberally construes Plaintiff's filings because he is proceeding *pro se*. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, a *pro se* non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hospital,* 221F.3d 1160,1164 (10th Cir. 2000). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. Additionally, in a summary judgment posture, the verified Complaint and the *Martinez* Report may be treated as affidavits. *Hall,* 935 F.2d at 1111.

**III.** **Analysis**

Plaintiff contends that Defendants violated his constitutional right to access the courts by restricting his access to legal resources. (Doc. 1 at 4-6). In 1977, the Supreme Court reaffirmed that prisoners have a constitutional right to access the courts and that prisons must provide basic legal services to ensure that prisoners are able pursue their rights in court. *Bounds v. Smith*, 430 U.S. 817, 828 (1977) ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."). In *Lewis v. Casey*, the Supreme Court restricted the breadth of *Bounds*, ruling that *Bounds* did not create an "abstract, freestanding right to a law library or legal assistance" and that an access-to-the-courts claim could not be established on a showing that the prison's law library or assistance program was "subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 35 (1996). Rather, a plaintiff must prove that he suffered an actual injury from the prison's inadequate legal resources; he must show that he "was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of

4

confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citing *Casey*, 518 U.S. at 351–55).

The question for this Court is whether the conduct alleged in Plaintiff's complaint is sufficient to establish a violation of his right to access the courts as elucidated in *Casey*. Because Plaintiff claims that Defendants prevented him from litigating two distinct cases, the Court will address both cases in turn.

### a.  **State Habeas Petition**

Plaintiff states that, at the time of his transfer to CNMCF, the Virginia Supreme Court had recently denied his state habeas petition. (Doc. 1 at 4). The petition was denied on January 14, 2009, and Plaintiff desired to file a motion for reconsideration. (*Id.* at 4, 6 (at one point Plaintiff states that he wanted to "appeal" the Supreme Court of Virginia's denial, but later states that he filed "a motion for reconsideration" with the Supreme Court.)). Plaintiff's motion for reconsideration was due no later than February 14, 2009. (*Id.* at 4; *see also* Rule 5:20(b) of the RULES OF THE SUPREME COURT OF VIRGINIA (stating that petitions for rehearing for a writ of habeas corpus must be filed within thirty days of the Supreme Court's decision)). He contends that Defendants at CNMCF prevented him filing a "meaningful and timely" motion for reconsideration because they provided him with no access to "rules of procedure . . . case law or legal authority . . . [or] a person trained in the law." (Doc. 1 at 4-5). As a result, Plaintiff states that his motion for reconsideration was "too late" though he does not actually state whether or how the Supreme Court of Virginia ruled on the motion. (*Id.* at 6).

It appears that Plaintiff has been less than truthful with the Court when it comes to the circumstances surrounding his transfer to CNMCF. He claims that he was transferred

5

on February 2, 2009, leaving him in the precarious position of having to file a motion for reconsideration within 12 days of arriving at CNMCF. (*Id.* at 4). However, the docket report for Plaintiff's § 1983 civil rights suit that he commenced in the United States District Court for the District of Western Virginia in 2009 indicates that Plaintiff was not transferred to New Mexico until March of 2009.[2] Plaintiff's § 1983 suit was filed in the Western District of Virginia on February 12, 2009, ten days after he was supposedly transferred to New Mexico. (*See, Fawley v. Johnson,* 09cv41 JLK, Doc. 1 at 1). The first page of the handwritten complaint lists Plaintiff's place of confinement as the "Keen Mountain Correctional Center[,]" which is a facility run by the Virginia Department of Corrections in Oakwood, Virginia. (*Id.*).[3] All of Plaintiff's filings in the § 1983 suit for the month of February, 2009, indicate that Plaintiff was still incarcerated in Virginia. For example, Plaintiff's *Motion for Leave to Amplify Plaintiff's Civil Rights Complaint*, filed on February 25, 2009, lists "Commonwealth of Virginia, County of Buchanan" as his address and is notarized by a Virginia notary. (09cv41 JLK, Doc. 12 at 2). Most telling, Plaintiff filed a motion for an extension of time on March 3, 2009, in which he advised that "my address has changed due to a transfer from Virginia to the New Mexico Department of Corrections on 02 March 2009." (09cv41, JLK, Doc. 22 at 1).

Based on the facts established by Plaintiff's litigation activity in the Western District

---

[2] The Court may take judicial notice of the proceedings in the Western District of Virginia since it has a direct relation to the instant case. *St. Louis Baptist Temple, Inc. V. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[3] *See, http://www.vadoc.state.va.us/facilities/western/keen-mt/*

of Virginia, it is clear that the New Mexico Defendants could not possibly have prevented him from filing a timely motion for reconsideration to the Supreme Court of Virginia. Therefore, Plaintiff has failed to show that demonstrate that Defendants' actions caused any "actual injury." Summary judgment in favor of Defendants is therefore appropriate on this claim. *Gee*, 627 F.3d at 1191.

### b. Civil Rights Case

Plaintiff's second allegation of interference with access to the courts relates to the same Western District of Virginia civil rights case mentioned in the last section. Plaintiff claims that, at some point before his transfer to New Mexico, the judge assigned to his Virginia case ordered him to provide copies of all institutional grievances he had filed. (Doc. 1 at 5). Plaintiff was unable to comply with this order because, upon his transfer to New Mexico, "prison officials refused me any and all legal access, in a discriminatory manor [sic] . . . denying photocopying services and law library access, or access to a person trained in the law." (*Id.*).

The order that Plaintiff appears to be referring to was an order signed by United States Magistrate Judge Michael Urbanski on February 18, 2009, conditionally granting Plaintiff the right to proceed *in forma pauperis* and requiring that Plaintiff submit a certified copy of his inmate trust account to the Court. (09cv41 JLK, Doc. 9). The Court also ordered Plaintiff to file an amended complaint with more precise allegations and to include copies of any and all institutional grievances relating to his claims. (*Id.* at 2). Plaintiff requested an extension of time to submit the requested documents, advising the Court that he was being transferred to New Mexico. (09cv41 JLK, Doc. 19). Judge Urbanski granted the motion and stated that, due to the transfer, "Fawley does not need to attach copies of his grievance

7

and appeal forms at this time . . . but he is directed to submit them as soon as possible." (09cv41 JLK, Doc. 20).

Despite Judge Urbanski's open-ended directive to submit his prison grievances, Plaintiff continued to complain that he was unable to provide his Virginia grievances due to his lack of access to adequate legal resources in New Mexico. Judge Urbanski then informed Plaintiff that he did not bear the burden of proving exhaustion of administrative grievances and he relieved Plaintiff of any duty to provide grievances not already in his possession. (09cv41 JLK, Doc. 51 at 2)

> Fawley also requests . . . that the [Virginia Department of Corrections] provide him with copies of any related grievances. Incarcerated pro se plaintiffs do not need to affirmatively plead their administrative grievances; therefore Fawley does not need to provide copies of grievances he may not already have. The defendants may raise the affirmative defense of administrative exhaustion and document Fawley's grievances.

*Id.* In July of 2010, Plaintiff submitted no less than 112 pages worth of grievances that he filed while incarcerated in Virginia. (09cv41 JLK, Doc. 80 at 20-25, 30-63; Doc. 80-1 at 1-45, 53-82).

Based on the record contained in cause 09cv41, it appears that the legal access policies in effect in New Mexico in no way prevented Plaintiff from pursuing his case in the Western District of Virginia. The docket report reflects that Plaintiff filed no less than 70 motions, letters, complaints and responses between his transfer to New Mexico and the conclusion of the case. (*See, generally*, 09cv41 JLK). Whatever legal access restrictions may have been placed on Plaintiff while he was incarcerated in New Mexico, they did not prevent him from filing over 100 pages worth of grievances from his time in Virginia. Therefore, the Court finds that Plaintiff has not shown that Defendants inflicted any actual

...

or relevant injury in his attempts to litigate his § 1983 action in Virginia.

Even if the legal access policies in New Mexico had somehow prevented Plaintiff from filing copies of any grievances - though it does not appear that they did - he still would not have established actual injury because the district court ruled in his favor on the question of whether he had exhausted his administrative grievances. In granting summary judgment against Plaintiff, United States District Judge Jackson Kiler explicitly found that defendants had rendered the grievance process "unavailable" to Plaintiff while he was incarcerated in Virginia and he declined to dismiss the case on exhaustion grounds. (09cv41 JLK, Doc. 115 at 18-20). Plaintiff cannot claim that an inability to file copies of grievances prejudiced his § 1983 case in any way.

## IV.    Conclusion

Plaintiff claims that he was injured by Defendants' restrictive legal access policies in that he was prevented from filing a timely motion for reconsideration with the Virginia Supreme Court and he was prevented from filing copies of grievances in compliance with a court order. (Doc. 1 at 4-6). However, a review of Plaintiff's § 1983 action in the Western District of Virginia indicates that he was still housed in Virginia when his motion for reconsideration was due. In addition, the docket shows that Plaintiff was not prevented from filing voluminous grievance records with the court, and that the district court ruled in Plaintiff's favor on the issue of grievance exhaustion. For those reasons, the Court finds that Plaintiff has failed to show that Defendants frustrated or impeded his efforts to pursue a nonfrivolous legal claim.

**IT IS THEREFORE RECOMMENDED** that Plaintiff *Complaint, A Civil Action Under*

*42 U.S.C. § 1983*, (Doc. 1), be **DISMISSED WITH PREJUDICE**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE